1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   COLTON JAMES ROOD,                    Case No. 1:20-cv-00315-AWI-CDB (PC)

12                    Plaintiff,           **FINDINGS AND RECOMMENDATIONS
                                           TO GRANT DEFENDANTS' MOTION
13         v.                              FOR SUMMARY JUDGMENT FOR A
                                           FAILURE TO EXHAUST
14   BURDEN, et al.,                       ADMINISTRATIVE REMEDIES**

15                    Defendants.          (Doc. 49)

16

17         Plaintiff Colton James Rood is proceeding *pro se* and *in forma pauperis* in this civil rights

18   action brought pursuant to 42 U.S.C. § 1983.

19         **I.      PROCEDURAL BACKGROUND**

20         Plaintiff initiated this action on February 26, 2020. (Doc. 1.)

21         Following screening, Plaintiff filed the operative second amended complaint on March 24,

22   2021. (Doc. 20.)

23         Following service of the second amended complaint, Defendants E. Burden and R. Strebel

24   filed an answer on December 24, 2021. (Doc. 30.)

25         On February 4, 2022, the Court issued its Discovery and Scheduling Order. (Doc. 38.)

26         Following Defendants' request to modify the Discovery and Scheduling Order, the

27   deadline for the filing of an exhaustion motion was extended from June 3, 2022 to July 18, 2022.

28   (*See* Doc. 46.) Although Plaintiff objected to the extension of the exhaustion motion filing

deadline (Doc. 47), his objections were overruled in an Order issued June 2, 2022. (Doc. 48.)

On June 23, 2022, Defendants filed their motion for summary judgment, alleging Plaintiff failed to exhaust his administrative remedies prior to filing suit. (Doc. 49.) Plaintiff filed a timely opposition (Doc. 53) and Defendants replied thereto (Doc. 55). Thereafter, on September 28, 2022, Plaintiff filed a document titled "Additional Documentation Supporting Plaintiff's Objection to Defendants' Motion for Summary Judgement (Exhaustion)." (Doc. 57.)

On October 6, 2022, the Court issued its Order of Reassignment, reassigning this action to the undersigned as magistrate judge. (Doc. 58.)

## II.   SUMMARY OF FACTS

### *Plaintiff's Allegations*

Plaintiff's claims stem from incidents at the Substance Abuse Treatment Facility and State Prison, Corcoran ("SATF"). (Doc. 20 at 4-8.) In February of 2018, "several inmates" told Plaintiff that Correctional Officers Strebel and Mejia were telling inmates from "various gangs" that "no heroin[] would come in until . . . Rood was 'dealt with.'" (*Id*. at 4-5.) "Soon after, Mejia made a statement at Rood to the effect of, 'You're not dead yet?'" (*Id*. at 5.) Because of these threats, Plaintiff believed that his life was in danger and requested to be placed in administrative segregation ("ad seg"). (*Id*.) He contends prison officials denied his request. (*Id*.) Therefore, Plaintiff went on a hunger strike for several days. (*Id*.) During this time, Plaintiff asserts he was "brought in front of . . . staff to address the issues which caused the hunger strike," including Correctional Lieutenant Burden, Correctional Officer Palafox, and the D Yard Captain. (*Id*.) The captain told Plaintiff that "Palafox was present as a witness and to provide counsel." (*Id*.) Lieutenant Burden stated that he would not place Plaintiff in ad seg because it was "time consuming," even though he acknowledged "that [Plaintiff's] life was under threat." (*Id*.) Later, the captain told Plaintiff that "all inmates are liars," and that he would only believe Plaintiff and place him in ad seg if his allegations were solely against inmates and not against staff. (*Id*. at 6.) He also stated that, for this same reason, he would not refer Plaintiff to "mental health." (*Id*.)

Several days later, Plaintiff contends he was on the yard when he saw Strebel make "a head gesture to a group of inmates." (Doc. 20 at 6.) The group then "snuck up and attacked

[Plaintiff] with knives." (*Id.*) Plaintiff "disabled" the inmate with the knife and the others fled. (*Id.*) Immediately after, Burden appeared, and Plaintiff asked, "Why couldn't you do it yourself?" Plaintiff asserts Burden then "smiled and said 'no comment' and walked away." (*Id.*) Plaintiff contends he suffered "deep lacerations to his neck and a defensive laceration on his left arm" and was transferred to Kaweah Delta Medical Center for surgery. (*Id.*) Upon his return to SATF, Plaintiff was placed in ad seg, and his property was "thrown away." (*Id.*) Plaintiff contends he "continues to suffer pain, arthritis, and mobility issues as a result of his injuries." (*Id.*)

### A. Defendants' Undisputed Facts

Defendants submitted the following Statement of Undisputed Facts:

1. At all times relevant to the Complaint, Plaintiff Colton Rood (AL-3577) was a prisoner in the custody of the California Department of Corrections and Rehabilitation (CDCR), incarcerated at the Substance Abuse Treatment Facility (SATF).

2. The screened operative Second Amended Complaint states an Eighth Amendment failure to protect claim against Defendants Strebel and Burden.

3. Plaintiff initiated this action on February 26, 2020, while in the custody of Shasta County Jail.

4. Plaintiff filed the operative Second Amended Complaint on March 24, 2021, while in the custody of CDCR.

5. In the Second Amended Complaint, Plaintiff alleged that he did not file an appeal or grievance concerning ALL the facts contained in the Second Amended Complaint.

6. Plaintiff alleges that near the end of February 2018, Officer Strebel and non-defendant Officer Meja subjected him to reprisals and yelled at Plaintiff in front of groups of inmates.

7. Plaintiff alleges that near the end of February 2018, Officer Strebel told several groups of inmates on the yard that no heroin[] would come in until Plaintiff "was dealt with." Plaintiff further alleges that Defendant Strebel told another inmate to "get that dude" while pointing at Plaintiff.

8. Plaintiff alleges that near the end of February 2018, Officer Burden was made aware

that Plaintiff's life was under threat, and stated the reason he would not place Plaintiff in administrative segregation was because it was "time consuming."

9. Plaintiff alleges that Officer Strebel, before rushing into the program office, made a hand gesture to a group of inmates located behind Plaintiff on the yard. As a result, the group of inmates snuck up and attacked Plaintiff with knives.

10. Plaintiff's Complaint alleges that immediately after being stabbed on the yard, Defendant Burden showed up and Plaintiff asked Defendant Burden "why couldn't you do it yourself?", and Defendant Burden smiled, said no comment and walked away.

11. Plaintiff was housed at SATF from January 4, 2018, to March 19, 2018, and again from July 30, 2018, to November 9, 2018.

12. Plaintiff filed the following ten appeals while housed at SATF:

    a.  SATF-D-18-00490, received January 18, 2018 (Due to this incident occurring at [Pleasant Valley State Prison (PVSP)], the appeal was forwarded to PVSP;

    b.  SATF-D-18-00633, received February 8, 2018;

    c.  SATF-Z-18-01362, received March 13, 2018;

    d.  SATF-E-18-03495, received June 28, 2018;

    e.  SATF-E-18-04214, received July 30, 2018;

    f.  SATF-E-18-04309, received July 25, 2018 (Due to this incident occurring at [Mule Creek State Prison (MCSP)], the appeal was forwarded to MCSP);

    g.  SATF-E-18-04317, received June 26, 2018 (Due to this incident occurring at MCSP, the appeal was forwarded to MCSP);

    h.  SATF-E-18-04992, received September 19, 2018;

    i.  SATF-E-18-05667, received September 26, 2018; and

    j.  SATF-Z-18-06145, received November 14, 2018.

13. In appeal log no. SATF-Z-01362, submitted February 17, 2018, Plaintiff complained about Officer Villela, Officer Tristian, and Defendant Strebel gassing him, placing handcuffs on him too tightly, and humiliating him by attempting to have him strip out

in front of female staff. The grievance alleges Defendant Strebel told him to "strip out of his boxers," but goes on to further state that Defendant Strebel did not "press him to strip out of his boxers." The appeal was partially granted at the second level of review on March 27, 2018, in that an appeal inquiry was conducted.

14. Appeal log no. SATF-Z-01362, was not exhausted to the third level of review.

15. On March 19, 2018, Plaintiff was transferred from SATF to North Kern State Prison (NKSP). While at NKSP, Plaintiff did not submit any appeals in which he complained about Defendants Burden or Strebel, or the allegations in the operative complaint.

16. The next day, on March 20, 2018, Plaintiff was transferred from NKSP to High Desert State Prison (HDSP). While at HDSP, Plaintiff did not submit any appeals in which he complained about Defendants Burden or Strebel, or the allegations in the operative complaint.

17. On April 5, 2018, Plaintiff was transferred from HDSP back to SATF. While Plaintiff was at SATF during this second time, Plaintiff did not submit any appeals in which he complained about Defendants Burden or Strebel, or the allegations in the operative complaint.

18. On November 9, 2018, Plaintiff was transferred from SATF to Sierra Conservation Center (SCC). While at SCC during this time, Plaintiff did not submit any appeals in which he complained about Defendants Burden or Strebel, or the allegations in the operative complaint.

19. On December 5, 2018, Plaintiff was transferred from SCC to [Deuel] Vocational Institution (DVI). While at DVI, Plaintiff did not submit any appeals in which he complained about Defendants Burden or Strebel, or the allegations in the operative complaint.

20. On January 14, 2019, Plaintiff was paroled, and was under the supervision of the Division of Adult Parole Operations (DAPO), until he was returned to CDCR custody on October 15, 2020, when he was transferred to NKSP.

21. Between February 1, 2018, to March 24, 2021, Plaintiff filed a total of twenty

grievances. Only seven of the grievances that were filed by Plaintiff were for alleged incidents that occurred at SATF. Only one of these grievances, log no. SATF-Z-01362, named Defendant Strebel. The rest of the grievances do not involve the time period in question, name either Defendant Burden or Defendant Strebel, or allege the same allegations found in the operative complaint.

22. Between March 2008 and April 8, 2022 (the date the OOA pulled the grievance history), Plaintiff filed eight appeals with the Office of Appeals (the final level of review) that were accepted for review. None of the eight appeals filed by Plaintiff concerned the time period in question or incidents that occurred at SATF.

23. Between March 2008 to April 8, 2022 (the date the OOA pulled the grievance history), Plaintiff filed other appeals with OOA that were screened out. Of the appeals that were screened out, only one concerned incidents that occurred at SATF. However, this appeal did not concern Defendants Strebel or Burden or the allegations in the Complaint.

(Doc. 49-3 at 1-5.)[1]

### III.  LEGAL STANDARDS

#### A.  Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

---

[1] Subsequent references to "UDF" followed by a specific number refer to Defendants' Statement of Undisputed Facts and a specific paragraph contained therein.

evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).

Summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment … is satisfied." *Id.* at 323.

## B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is mandatory and "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Inmates are required to "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). The exhaustion requirement applies to all inmate suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of the relief sought by the prisoner or offered by the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is an affirmative defense, which the defendant must plead and prove. *Jones*, 549 U.S. at 204, 216. The defendant bears the burden of producing evidence that proves a failure to exhaust; and, summary judgment is appropriate only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows the plaintiff failed to exhaust. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014).

On a motion for summary judgment, the defendant must prove (1) the existence of an available administrative remedy and (2) that the plaintiff failed to exhaust that remedy. *Id.* at 1172 (citation omitted). If the defendant meets this burden, the plaintiff then "has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* (citation omitted). "However, … the ultimate burden of proof remains with the defendant." *Id.*

An inmate "need not exhaust unavailable [remedies]." *Ross v. Blake*, 578 U.S. 632, 642 (2016). An administrative remedy is unavailable "when (despite what regulations or guidance materials may promise) it operates as a simple dead end with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; or when "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use, [i.e.,] some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate [the mechanism]"; or "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643-44.

When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), *overruled on other grounds* by *Albino*, 747 F.3d at 1168-69. "If a motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge." *Albino*, 747 F.3d at 1170. If the court finds that remedies were not available, the prisoner exhausted available remedies, or the failure to exhaust available remedies should be excused, the case proceeds to the merits. *Id.* at 1171.

### C.  CDCR Grievance Process

The California Department of Corrections and Rehabilitation ("CDCR") has an administrative grievance system for prisoners to appeal a policy, decision, action, condition, or omission by the department or staff if it has an adverse effect on prisoner health, safety, or welfare. Cal. Code Regs. tit. 15, §§ 3084.1(a) (2018), 3999.226(a). Compliance with 42 U.S.C. §

8

1   1997e(a) requires California-state prisoners to utilize CDCR's grievance process to exhaust their

2   claims prior to filing suit in court. *See Sapp v. Kimbrell*, 623 F.3d 813, 818 (9th Cir. 2010); *see*

3   *also Woodford*, 548 U.S. at 85-86. Administrative appeals are generally subject to two to three

4   levels of review before the remedy is deemed exhausted. Cal. Code Regs. tit. 15, §§ 3084.1(b)

5   (2018), 3084.7(d)(3) (2018), 3999.226(g), 3999.230(h); s*ee Sapp*, 623 F.3d at 818.

6       **IV.   EVIDENTIARY MATTERS**

7       Plaintiff has failed to properly respond to Defendants' Statement of Undisputed Facts in

8   support of the motion for summary judgment. Plaintiff was served with a *Rand*[2] warning that

9   included the following language:

> In accordance with Local Rule 260(a), Defendants have filed a
> Statement of Undisputed Facts that contains discrete, specific
> material facts to support their entitlement to summary judgment. In
> response to this Statement, Local Rule 260(b) requires you to
> "reproduce the itemized facts in the Statement of Undisputed Facts
> and admit those facts that are undisputed and deny those that are
> disputed, including with each denial a citation to the particular
> portions of any pleading, affidavit, deposition, interrogatory answer,
> admission, or other document relied upon in support of that denial."
> You may also "file a concise Statement of Disputed Facts, and the
> source thereof in the record, of all additional material facts as to
> which there is a genuine issue precluding summary judgment or
> adjudication." *Id*. You are responsible for filing all evidentiary
> documents cited in the opposing papers. *Id*.

18   (Doc. 49-1 at 2.)

19       Plaintiff neither reproduced Defendants' itemized facts, nor admitted or denied those

20   facts. (*See* Doc. 53.) Because Plaintiff has not complied with Rule 260(b),[3] the Court deems

21   Plaintiff to have admitted those facts.[4] *See, e.g.*, *Beard v. Banks*, 548 U.S. 521, 527 (2006) ("by

22   failing specifically to challenge the facts identified in the defendant's statement of undisputed

---

[2] *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc).

[3] The Court further observes that Plaintiff failed to reproduce Defendants' statement of undisputed facts, or to admit or deny those facts, in his sur-reply or filing dated September 28, 2022. (*See* Doc. 57.)

[4] In the First Informational Order in Prisoner/Civil Detainee Civil Rights Case, issued February 27, 2020, Plaintiff was advised: "In litigating this action, the parties must comply with this Order, the Federal Rules of Civil Procedure ('Fed. R. Civ. P.'), and the Local Rules of the United States District Court, Eastern District of California ('Local Rules'), as modified in this Order. Failure to so comply will be grounds for imposition of sanctions which may include dismissal of the case. Local Rule 110; Fed. R. Civ. P. 41(b)." (*See* Doc. 3 at 1.)

9

1    facts, [plaintiff] is deemed to have admitted the validity of the facts contained in the [defendant's]

2    statement."); *Brito v. Barr*, No. 2:18-cv-00097-KJM-DB, 2020 WL 4003824, at *6 (E.D. Cal.

3    July 15, 2020) (deeming defendant's undisputed facts as admitted after plaintiff failed to comply

4    with Local Rule 260(b)). Nevertheless, where Plaintiff's verified complaint or evidence submitted

5    in support of his opposition to Defendants' motion for summary judgment bring Defendants'

6    proffered facts into dispute, the Court considered the complaint and any evidence. *Jones*, at 923

7    (the court considers as evidence those parts of the verified complaint based on plaintiff's personal

8    knowledge).

9           Next, this Court's Local Rules provide for a motion, an opposition, and a reply. *See* Local

10   Rule 230(l). There is nothing in the Local Rules or the Federal Rules that provides the right to file

11   a sur-reply. The court generally views motions for leave to file a sur-reply with disfavor. *Hill v.*

12   *England*, No. CVF05869 REC TAG, 2005 WL 3031136, at *1 (E.D. Cal. 2005) (citation

13   omitted). However, district courts have the discretion to either permit or preclude a sur-reply. *See*

14   *JG v. Douglas County School Dist.*, 552 F.3d 786, 803 n.14 (9th Cir. 2008) (district court did not

15   abuse discretion in denying leave to file a sur-reply where it did not consider new evidence in

16   reply).

17          Plaintiff's September 28, 2022 filing (*see* Doc. 57 ["Additional Documentation

18   Supporting Plaintiff's Objection to Defendants' Motion for Summary Judgment (Exhaustion)"])

19   is a sur-reply. Plaintiff does not have the right to file a sur-reply, and he did not file a motion

20   seeking leave to file a sur-reply. However, Defendants have not filed an objection to Plaintiff's

21   filing. Hence, the Court will permit and consider Plaintiff's sur-reply.

22          **V.     DISCUSSION**

23          The question before the Court is whether Plaintiff exhausted his administrative remedies

24   concerning his Eighth Amendment failure to protect claims against Defendants Burden and

25   Strebel.

26          The undersigned finds Defendants have met their initial burden of showing there is no

27   genuine issue of material of fact because there exists an available administrative remedy and

28   Plaintiff failed to exhaust his administrative remedies. (Doc. 49-2 at 7-8; 49-3 at 2-3, ¶¶ 12; 49-4

at 2, ¶¶ 2-4, 6-16 & Ex. 1; Doc. 49-5 at 2, ¶¶ 2-7; Doc. 49-6 at 2, ¶¶ 2-5; Doc. 49-7 at 2-3, ¶¶ 3-6; Doc. 49-8 at 1-3, ¶¶ 1-10; Doc. 49-9 at 1-3, ¶¶ 2-11; Doc. 49-10 at 2-3, ¶¶ 6-9.) *See In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387; *Albino,* 747 F.3d at 1172. Specifically, Defendants have shown that of the seven grievances filed by Plaintiff for incidents occurring at SATF, only one of those grievances named Defendant Strebel, to wit: SATF-Z-18-01362. (UDF 21.) However, SATF-Z-18-01362 was not exhausted to the third level of review. (UDF 14.) Moreover, the substance of that grievance suggests it is unrelated to the allegations of Plaintiff's complaint. (UDF 13.) None of the remaining relevant grievances named Defendant Burden or Strebel, nor do they involve the same allegations found in Plaintiff's operative complaint. (UDF 21.)

Therefore, the burden shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172.

In his opposition, Plaintiff contends that when he returned from the hospital and was housed in ad-seg, he "asked for a 602 appeal from the officers" and was "laughed at and never given one." (Doc. 53 at 1.) He states staff told him "they threw all [his] property away because [he] 'wasn't supposed to be here' … AKA 'Dead' (on 3/7/2018)." (*Id*.) Plaintiff further contends that his attempt to contact "an outside source of protection (OIA)," advising them of "the situation and seeking remedy and refusal upon receipt of this letter to the Appeals Coordinator at SATF to be process as an appeal, ultimately satisfies the requirements of having to make an attempt to file an appeal …." (*Id*. at 1-2.) Plaintiff asserts he was in "a depreciated mental state due to surgery, concussions in rapid succession, and valley fever." (*Id*. at 2.) He contends he "attempted to place the papers" sent to the OIA "in a successive appeal and wrote in the appeal #SATF-E-18-4309-1, 'This is to be seen as one with the letters I sent to OIA.'" (*Id*.) Plaintiff states that in his "state of low functioning," he was convinced those actions were "an acceptable way to file an appeal and yet keep the details out of CDCR hands (appeals which they said to you opened allowing the killers that were after me to read what I wrote about them)." (*Id*.) Plaintiff alleges he was confused and his "physical and mental health played a major role." (*Id*.)  Plaintiff contends that directing "a letter to OIA instead of CDCR had been considered a form of appeal in

that OIA would look into it and send it to the Appeals Coordinator to be process in an inconspicuous way with the letter being sealed and given back … instead of it being opened for staff to read." (*Id*.) Plaintiff believed someone would come and speak with him first and he would be able to explain that his life was in danger, and he needed to be moved. (*Id*. at 3.) Instead, the Appeals Coordinator notified Plaintiff in an "open letter that she had received the letter form OIA. The letter came back wrinkled," and Plaintiff contends the staff person who gave it to him "became offensive towards" him. (*Id*.)

Plaintiff further asserts "multiple staff" made comments "about the attempted murder that had taken place at that institution and how that guy was & here for putting in their work, I knew that to file a 602 claiming them as the perpetrators would end with another attempt on" his life. (*Id*.) Plaintiff believed the OIA "would decide to take it over and come in with shields raised, but they gave [his] letter of accusation to the same people who kept trying to kill" him. (*Id*.) Plaintiff lists a series of events prior to the event giving rise to his claim (*id*.), then contends an event at HDSP in late March or early April 2018, involving an attack by two unknown assailants, resulted in Plaintiff and the assailants being brought together where Plaintiff says the assailants "asked (like pleasing dogs) 'Did we do a good job?' The cops confirmed that they had done a good job." (*Id*. at 4.)

Plaintiff also recounts an incident in August or September 2018 at SATF involved officers opening his "door unexpectedly allowing three people into" his cell to attack him" and that the officers "watched and did nothing." Plaintiff contends that when he "approached them they told [him] to say [he] was suicidal so the wounds" Plaintiff had would be considered "self-inflicted injuries." (*Id*.) Plaintiff contends "[t]hese things and more have led me to the clear understanding that when you say something too grand in a 602 appeal, not only will the officers read every word, but they will try to have you killed if the accusation is too great. I was in direct fear for my life for the purpose of filing an appeal directly to appeals coordinator for the expressions of the extreme experiences as are given in this lawsuit." (*Id*.) Plaintiff states his family was aware of "the extreme threat to his safety/inability to 602 (appeal) it/depreciated mental physical capacity," and that they sent a letter "to the division of Adult Institutions." (*Id*. at 4-5.) Plaintiff contends

"directly filing an appeal in this case is equivalent to facing off a desperate man with a gun in your face and telling him, 'If you don't shoot me I will tell the police who you are and you will be punished." (*Id*. at 5.) Plaintiff argues the letter sent by his family amounts to exhaustion of his administrative remedies. (*Id*.)

In Plaintiff's sur-reply, concerning Defendants' contention that SATF-E-18-4309 is unrelated to this action and that it should not "be seen or part of the letter to Office of Internal Affairs" because it "was cancelled," Plaintiff states he was never informed it was cancelled. (Doc. 57 at 1.) He argues CDCR "completely failed to respond" and that the "appeals process was effectively refused to [him] for this and other appeal issues after [he] left CDCR's Jurisdiction four years ago." (*Id*.) Plaintiff contends that 28 U.S.C. § 2675(a) provides that if an agency does not respond to a claim within six months, it is deemed denied, meaning it is exhausted. (*Id*.) Plaintiff asserts his "verbal request of an appeal and the subsequent denial by CDCR staff" amount to other attempts "to bring the issues of my claim to light within CDCR." (*Id*. at 1-2.) Plaintiff repeats that while he was housed in ad seg, within thirty days of the incident complained of, he requested a 602 appeal form from a guard; the guard acknowledged Plaintiff's request, laughed, and walked off. (*Id*. at 2.) Because he was never given a 602, Plaintiff contends he was "unable to file a grievance in this instance through no fault of [his] own." (*Id*.) Plaintiff then states, "It was denied by CDCR official(s) who had complete control over my circumstances." (*Id*.) Plaintiff asserts that his letter to the Office of Internal Affairs "put CDCR 'on notice' of the issues contained within this claim." (*Id*.) Plaintiff contends "Defendant had some its workers recently ransack my legal material for important documents and took the letter of acknowledgment from me. Fortunately, I had anticipated this and had a copy of this document at home sent to me. It is listed as 'Exhibit B.'" (*Id*.) He contends that in "many instances CDCR has deleted damning evidence from their Strategic Offender Management System (SOMS) in order to cover crimes." (*Id*.) Concerning Plaintiff's correspondence to the Office of Internal Affairs and Defendants' statement that "there were no urgent issues in the correspondence," he asserts that "is a lie, of course, as the correspondence talks about corruption leading to an ongoing institutional conspiracy to commit murder by staff. They did not read the correspondence and did not

1   acknowledge the issue as an appeal even though that would have been done per regulation at the

2   time." (*Id*. at 3.) Plaintiff avers the correspondence put CDCR on notice "of the charges brought

3   forward in this claim." (*Id*.) By receiving Plaintiff's "correspondence in their appeals office from

4   OIA and their refusal to consider it an appeal or 'Allegation of Staff Misconduct,'" this amounts

5   to "a denial of appeal that fulfills the exhaustion requirement." (*Id*.) Plaintiff asserts "the

6   corruption of the Inmate Appeals process has been acknowledged …" (*Id*. at 3-4.) Because

7   Plaintiff's correspondence described staff misconduct "specifically and generally" it would have

8   been "referred outside the grievance and appeal process to an appropriate authority within the

9   Department, but the Appeals Office refused to do their job and in doing so denied my appeal and

10  allowed my remedies to be deemed exhausted." (*Id*. at 4.)  Plaintiff concludes by asking the Court

11  to deny Defendants' motion. (*Id*.)

12          The Court has reviewed Exhibits A and B appended to Plaintiff's sur-reply. Exhibit A

13  concerns Log # 000000248100, submitted April 15, 2022, at HDSP. (*Id*. at 5.) Exhibit B is a

14  photocopy of a letter dated August 21, 2018, to Plaintiff from the Division of Adult Institutions,

15  California Substance Abuse Treatment Facility and State Prison at Corcoran. It is signed by P.

16  Brightwell, Associate Warden, Complex III, and acknowledges receipt of Plaintiff's

17  "correspondence dated July 20, 2018, to the Office of Internal Affairs." (*Id*. at 6.) It further

18  provides: "Your correspondence was forwarded to the Inmate Appeals Office for review. A

19  review of the inmate Appeals Tracking Systems (IATS) was completed. Your Appeal for Rules

20  Violation Report, log number 3405147, was given log number of SATF-E-18-4317 and

21  forwarded to Mule Creek State Prison (MCSP) where the RVR was generated. If you are

22  dissatisfied with the Second Level Response, follow instructions in Section F, on your 602, to

23  continue to the Third Level of Review." (*Id*.) Next, it reads in part: "It was determined that there

24  are no emergent/urgent issues in your correspondence. Therefore you are encouraged to utilize

25  the CDCR-602 process to address your concerns and submit it to the Inmate Appeals Office,

26  within 30 days of the occurrence." (*Id*.)

27                                  ***Preliminary Matters***

28          The parties do not dispute that Plaintiff did not pursue a *grievance* to the third level of

                                                  14

1   review regarding the allegations in Plaintiff's complaint.

2        At the core of Plaintiff's opposition and sur-reply are his assertions that (1) Plaintiff asked

3   for a 602 form while housed in ad seg within 30 days of the incident giving rise to his claim, but

4   the guard or guards laughed, walked away, and never provided the form following Plaintiff's

5   request; (2) that threats or intimidation kept Plaintiff from reporting the incident by way of a

6   grievance; (3) his correspondence to the Office of Legal Affairs served to exhaust his

7   administrative remedies; and (4) SATF-E-18-4309 exhausted his administrative remedies

8   regarding the instant claims. Setting aside what appear to be inconsistent positions—that Plaintiff

9   intended to file a grievance but was denied a form yet also believed that filing a grievance would

10  invite further assault—the Court will consider each alleged circumstance.

11       ***Denial of Grievance Form While Housed in Ad Seg***

12       Plaintiff asks this Court to find his administrative remedy was unavailable to him because

13  a guard or guards, from whom Plaintiff asked for a grievance or 602 form while housed in ad seg,

14  acknowledged Plaintiff's request, then laughed and walked away, never providing the requested

15  form.

16       Defendants contend Plaintiff was "clearly familiar with the grievance process and had

17  used it on numerous occasions during and after the alleged incidents." (Doc. 55 at 4.) They

18  contend "Plaintiff did use 602 Forms for other grievances during the same period, but [Plaintiff]

19  provides only a conclusory statement that 602 Forms were unavailable as his reason for failing to

20  comply with the regulations." (*Id.*).

21       Even assuming the truth of Plaintiff's assertion, the undersigned will not find Plaintiff's

22  unfulfilled request or requests for a grievance form amounts to unavailability, excusing Plaintiff's

23  failure to exhaust his administrative remedies. Plaintiff's assertion is vague and conclusory. In

24  one telling, Plaintiff alleges he asked "a guard" for a 602 form, but the guard just laughed and

25  walked away. In another telling, Plaintiff alleges "guards" did the same, inferring he asked for a

26  form on more than one occasion. In neither telling does Plaintiff identify the guard or guards,

27  either by name or by description. This type of vague allegation would turn the exhaustion

28  requirement on its head were it sufficient for purposes of finding unavailability, for all any inmate

1    need do is allege he asked, on at least one occasion, for a 602 or grievance form, but instead was

2    denied the form by an unidentified correctional officer or prison official. District courts in this

3    Circuit have held that a prisoner-plaintiff's vague and conclusory statements that he was denied

4    access to grievance forms are insufficient to defeat summary judgment on exhaustion grounds.

5    *See, e.g.*, *Caliz v. City of Los Angeles*, 2021 WL 3042281, at *13 (C.D. Cal. Apr. 27, 2021)

6    ("Plaintiff's statements are insufficiently detailed, as well as lacking in corroboration, to defeat

7    summary judgment. [¶] For example, in his Declaration he states, 'I was denied access to

8    request/complaint forms for over 25 days,' without identifying who denied him access to the

9    forms or explaining how he was denied access to the forms"), report and recommendation

10   adopted, 2021 WL 3037398 (C.D. Cal. Jul. 16, 2021); *Johnson v. Roesserr*, 2019 WL 3720096, at

11   *6 (C.D. Cal. June 28, 2019) ("Plaintiff's conclusory statements do not present 'evidence showing

12   that there is something in his particular case that made the existing and generally available

13   administrative remedies effectively unavailable to him'"), report and recommendation adopted,

14   2019 WL 3718783 (C.D. Cal. Aug. 6, 2019); *Moak v. Sacramento Cty.,* No. 2:15-cv-0640 MCE

15   KJN P, 2017 WL 3208720, at *9 (E.D. Cal. July 28, 2017) (holding that the plaintiff's

16   "conclusory statement that he asked for a grievance and unidentified floor officers would not give

17   him one" was insufficient to defeat summary judgment because there was "no evidence ...

18   provid[ing] details concerning the alleged denials, or whether [the plaintiff] took additional steps

19   to attempt to exhaust his remedies"); *Epps v. CSP Sacramento*, No. 214CV1347MCEACP, 2017

20   WL 117898, at *10 (E.D. Cal. Jan. 10, 2017) (finding that the plaintiff had not carried his burden

21   of producing evidence that available administrative remedies were unavailable to him where he

22   had "only his word ... that he was 'precluded' from exhausting his available administrative

23   remedies"); *Hall v. San Joaquin Cty. Jail*, No. 2:13-cv-00324 AC P, 2015 WL 1498909 at *5

24   (E.D. Cal. Mar. 31, 2015) (observing in dicta that the plaintiff had not provided "specific facts"

25   sufficient to defeat the motion for summary judgment because he had not identified "which

26   defendants he asked for grievance forms, when he asked them, or how many times").

27            Further, to the extent Plaintiff alleges he was in a "depreciated" mental state during this

28   time, the Court acknowledges that "an inmate's physical or mental condition can render

administrative remedies 'effectively unavailable.'" *Millner v. Biter*, No. 13-cv-02029, 2016 WL 888126, at *1 (E.D. Cal. Mar. 8, 2016). However, the law also states that once a physical or mental limitation has lifted, the inmate is required to file a grievance and be denied before the remedies will be deemed unavailable. *See Baker v. Villalobos*, No. 2:18-cv-02301-PA-GJS, 2021 WL 6804237, at *7 (C.D. Cal. Sept. 29, 2021) ("because Plaintiff never attempted to avail himself of the available prison grievance procedure to exhaust his … claims after he recovered from surgery and [was] able, it cannot be said that administrative remedies were unavailable to him"); *Skinner v. Haley*, No. 3:15-cv-00340-MMD-WGC, 2019 WL 5582233, at *6 (D. Nev. Sept. 26, 2019) ("because Plaintiff never attempted to avail himself of the prison grievance procedure after he was recovered from surgery and able, it cannot be said that administrative remedies were unavailable to him"); *see also Baker v. Schriro*, No. CV 07-0353-PHX-SMN (JRI), 2008 WL 622020, at * 5 (D. Ariz. Mar. 4, 2008) (administrative remedies available where inmate made no attempt to file a grievance when physically able); *Lipscomb v. Hickey*, No. 1:06-0307, 2009 WL 671398 (S.D. W.Va. Mar. 10, 2009) (inmate failed to exhaust administrative remedies when she did not file a grievance when she was able following surgery). Here, Plaintiff did not file a grievance once his "depreciated" mental and/or physical states had lifted. Thus, any mental or physical condition suffered by Plaintiff did not serve to excuse his failure to exhaust his administrative remedy by rendering it unavailable to Plaintiff.

### *Threats or Intimidation Concerning Report of an Incident*

Plaintiff alleges his administrative remedies were unavailable to him because he feared for his life following threats by prison officials. (Doc. 53.) Defendants contend Plaintiff's assertions are conclusory and are not alleged in his second amended complaint. (Doc. 55.)

Plaintiff's second amended complaint alleges that "slander [was] yelled at Rood while in front of groups of inmates," attributing the slander to Defendant Strebel and Officer Mejia, and that Plaintiff had been advised by other inmates that they "were telling several groups of inmates on the yard that no heroin[] would come in until … Rood was 'dealt with.'" (Doc. 20 at 4-5.) Plaintiff alleges Strebel told an inmate to "'get that dude,' pointing toward Rood as he passed by" and that soon after Officer Mejia said to Plaintiff, "'You're not dead yet?'" (*Id*. at 5.) Plaintiff

1   then alleges "[b]y these events Rood ascertained that his life was in immediately danger." (*Id.*) In

2   his opposition to Defendants' motion, Plaintiff cites to incidents occurring prior to February

3   2018—an attack on December 7, 2016 at MCSP, an attack on December 9, 2016 at MCSP, an

4   October 24, 2017 attack at PVSP, and a December 8, 2017 attack at PVSP—to support his

5   assertion. (*Id.* at 3-4.) He contends that when prison officials at SATF, on March 5, 2018, told

6   "several gangs" that no heroin would be available until Plaintiff "was gone," it created an

7   incentive for others to attack Plaintiff. (*Id.* at 4.) Plaintiff also contends he "was attacked from

8   behind - at the insistence of officers - with a knife. (HDSP) Late March/early April 2018" and

9   further cites to events occurring after the events giving rise to his claims here. (*Id.*) Plaintiff refers

10  to these incidents as "attempted murder by the cops." (*Id.*)

11      In *McBride*, the Ninth Circuit held that the threat of retaliation for reporting an incident

12  may excuse a prisoner's failure to exhaust administrative remedies. *McBride v. Lopez*, 807 F.3d

13  982, 987 (9th Cir. 2015). In so holding, the Ninth Circuit adopted the Eleventh Circuit's two-part

14  test set forth in *Turner v. Burnside*, 541 F.3d 1077, 1084-85 (11th Cir. 2008), for determining

15  when a threat renders the prison grievance process effectively unavailable. *McBride*, 807 F.3d at

16  987-88. Two conditions must be met: "'(1) the threat [of retaliation] actually did deter the

17  plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the

18  threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging

19  a grievance or pursuing the part of the grievance process that the inmate failed to exhaust.'" *Id.* at

20  987 (quoting *Turner*, 541 F.3d at 1085). The first prong of the test is subjective, whereas the

21  second prong of the test is objective. *Id.* at 988. At the objective or second prong, "there must be

22  some basis in the record for the district court to conclude that a reasonable prisoner of ordinary

23  firmness would have believed that the prison official's action communicated a threat not to use

24  the prison's grievance procedure and that the threatened retaliation was of sufficient severity to

25  deter a reasonable prisoner from filing a grievance." *Id.* at 987.

26      Here, liberally construing Plaintiff's pleadings, Plaintiff has met the first, subjective prong

27  of the test. Plaintiff contends he was deterred from lodging a grievance due to threats of

28  retaliation and fears for his life. However, Plaintiff has not met the second, objective prong of the

1  test. Plaintiff asserts prison staff made "comments about the attempted murder that had taken

2  place" and thus he knew that to file a 602 "would end with another attempt on [his] life." (Doc.

3  53 at 3.) This Court finds Plaintiff's assertions are like the hostile interactions at issue in

4  *McBride*:

5          Though the guards' statements may have seemed threatening, an
        inmate would not have reasonably understood that the guards

6          intended to retaliate for filing a grievance. The only potentially
        relevant fact McBride alleges is that he was beaten, and that the

7          guards (who beat him) made the statements. If this fact, standing
        alone, were sufficient, any hostile interaction between a prisoner and

8          prison officials would render the prison's grievance system
        unavailable. There is no reason to allow inmates to avoid filing

9          requirements on the basis of hostile interactions with guards when
        the interaction has no apparent relation to the use of the grievance

10         system. Hostile interaction, even when it includes a threat of
        violence, does not necessarily render the grievance system

11         "unavailable."

12  *McBride*, 807 F.3d at 988; *see also Garcia v. Heath*, No. 2:13-cv-1952 JAM AC P, 2016 WL

13  4382684, at *11 (E.D. Cal. Aug. 17, 2016) (rejecting plaintiff's argument that fear of retaliation

14  excused non-exhaustion where plaintiff's evidence did not show "direct connection" between

15  alleged retaliatory conduct and failure to exhaust appeal), report and recommendation adopted,

16  2016 WL 7451556 (E.D. Cal. Dec. 27, 2016).

17          There is no basis in this record to conclude that a reasonable prisoner of ordinary firmness

18  could have believed that the prison officials' action communicated a threat not to use the prison's

19  grievance procedure and that the threatened retaliation was of sufficient severity to deter a

20  reasonable prisoner from filing a grievance. Neither the previous assaultive incidents, nor the

21  comments made by Defendants giving rise to Plaintiff's claim in the second amended complaint

22  involve a threat relating to the filing of a grievance. Hence, there is no direct connection between

23  the alleged retaliatory conduct and the failure to exhaust administrative remedies.

24                    ***Plaintiff's Correspondence to the Office of Internal Affairs***

25          As to Plaintiff's argument that his correspondence to the Office of Internal Affairs served

26  to exhaust his administrative remedies, the Court is not persuaded. First, Plaintiff's own Exhibit B

27  to his sur-reply belies Plaintiff's position. It expressly states: "It was determined that there are no

28  emergent/urgent issues in your correspondence. Therefore you are encouraged to utilize the

1   CDCR-602 process to address your concerns and submit it to the Inmate Appeals Office, within

2   30 days of the occurrence." (Doc. 57 at 6 [Exhibit B].) As long as some relief was still available

3   to Plaintiff through the administrative process, he was required to continue his exhaustion efforts

4   even if the exhaustion process would ultimately prove futile. *Brown v. Valoff*, 422 F.3d 926, 940-

5   45 (9th Cir. 2005). Here, despite arguing his correspondence included emergent or urgent issues,

6   Plaintiff failed to submit a grievance as advised where an available remedy remained.

7        Next, the California prison system's grievance regulations "define the boundaries of

8   proper exhaustion." *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009). And in *Wilson v.*

9   *Wann*, No. CIV S-06-1629 GEB KJM P, 2008 WL 4166886, *2 (E.D. Cal. Sept. 8, 2008), this

10  Court held that letters to the warden and internal affairs do not exhaust administrative remedies

11  under analogous regulations. *See also Cato v. Darst*, No. 2:14-cv-0959 TLN KJN P, 2016 WL

12  1734759, at *14 ("While [a letter to the CDCR Director] caused a use of force investigation to be

13  initiated, a use of force investigation does not satisfy the administrative exhaustion requirement of

14  the PLRA"). More recently, in *Dillingham v. Garcia*, No. 1:19-cv-00461-AWI-GSA-PC, 2022

15  WL 16751947 (E.D. Cal. Nov. 7, 2022), at *8, the plaintiff's "argument that the *confidential*

16  *inquiry* exhausted his administrative remedies" was determined to be without merit. According to

17  the CDCR's grievance procedures, request for interview forms (CDCR 22), sending complaints to

18  the hiring authority, or writing letters to other state agencies do not suffice to provide notice and

19  exhaust the administrative remedies.

20       In sum, Plaintiff's letter to the Inmate Appeals Office did not serve to exhaust his

21  administrative remedies.

22                                    ***SATF-E-18-4309-1***

23       Plaintiff contends that grievance log number SATF-E-18-4309-1 operates to exhaust his

24  administrative remedies because it put CDCR on notice of his claims against Defendants Burden

25  and Strebel, claiming it should "be seen as one with the letters I sent to OIA." (Doc. 53 at 2.)

26  Defendants reply that Plaintiff's argument lacks merit because this grievance does not name

27  defendants or refer to the claims in this suit; instead, it concerns a hearing on a rules violation

28  report that occurred at MCSP four months after the incidents giving rise to Plaintiff's claims.

(Doc. 55 at 6.) Moreover, Defendants contend the grievance was transferred to MCSP after screen

out by SATF, and "eventually canceled at the final level of review," meaning it "did not and

could not have served to exhaust Plaintiff's claims in the Second Amended Complaint." (*Id*. at 6-

7.) In his sur-reply, Plaintiff essentially argues that CDCR erred—because he was not informed of

the cancellation, CDCR "completely failed to respond," and that the "appeals process was

effectively refused to [him] for this and other appeals issues after [he] left CDCR's jurisdiction

four years ago." (Doc. 57 at 1.)

Exhibit 8 to the Declaration of Gabriel Lujan is a copy of the grievance or appeal bearing

the numbers "SAFT-E-18 4309 1" and "MCSP-C 18-03560," and includes Plaintiff's explanation

of his grievance:

> On July one (1), 2018, RVR #3405147 was heard after being rejected
> by D.A. Before the hearing commenced the SHO was informed that
> I had not met with a SA (staff assistant) 24 hours before the hearing;
> that the I.E. had failed his duty by not discovering I/M Caudle, as
> discussed for the investigation, and by changing the name LVN
> "BLOCK" to "BROCK," and claiming she no longer exists within
> the system; I/M Requested the R.E. be available at the hearing in
> some fashion and was denied; Credible and relevant witnesses were
> denied – SHO said that to question all relevant witnesses would take
> too long; the guilty finding was based on a "Credibility
> determination" based on a "He said/She said basis," and yet SHO
> denied character witnesses (staff and inmate), some of which (staff)
> heard the LT say, "I set you up to be here," about this RVR; SA
> wasn't present during Q's of I.Es.
>
> Additionally, I/M was not given Initial RVR (as seen on pg. 2 of 11
> of DHR's "6/8/2018") even though I.E. Flippin was informed that all
> property had been confiscated several months before. I/M was
> accused of "playing games when inquiring about it. …SHO
> fabricated multiple statements of I/M, including the plea…vision
> impairment was not acknowledged…C/O Garza was introduced as
> S/A on 6/21/18, not Williams. … SHO makes contradictory
> statements out of fabricated statements, claiming that "There is no
> evidence of …" was an admission of guilt, stating, … "he did not
> intentionally expose himself." The presen[c]e of witnesses was
> denied at the hearing w/o cause…More to add

(Doc. 49-4 at 50, 52.) As noted by Defendants in their reply, this appeal was forwarded to MCSP

on August 1, 2018. (*Id*. at 77.) The grievance was ultimately screened out or cancelled on April

15, 2019. (*See* Doc. 49-10 at 6, 9 [Moseley Declaration].)

Significantly here, and as revealed in the above quoted passage, the grievance relied upon

21

1  by Plaintiff is not related to the claims asserted in Plaintiff's second amended complaint.

2  Therefore, SATF-E-18-4309-1 does not operate to exhaust Plaintiff's administrative remedies.

3      **VI.    CONCLUSION AND RECOMMENDATIONS**

4      Based on the foregoing, the Court recommends that Defendants' motion for summary

5  judgment for a failure to exhaust administrative remedies (Doc.49) be **GRANTED**. Judgment

6  should be entered in favor of Defendants Burden and Strebel. Plaintiff's complaint should be

7  dismissed without prejudice.

8      These Findings and Recommendations will be submitted to the United States District

9  Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days**

10 of the date of service of these Findings and Recommendations, the parties may file written

11 objections with the Court. The document should be captioned, "Objections to Magistrate Judge's

12 Findings and Recommendations." Failure to file objections within the specified time may result in

13 waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing

14 *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

15 IT IS SO ORDERED.

16     Dated:  __March 13, 2023__

17                            UNITED STATES MAGISTRATE JUDGE